UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------
FLY SHOES S.R.L.,

               Plaintiff,

   - against -

BETTYE MULLER DESIGNS INC., NEW YORK
TRANSIT INC., and BETTYE MULLER,

               Defendants.
---------------------------------

14 Civ. 10078 (LLS)

**OPINION & ORDER**

    Defendants New York Transit Inc. ("NY Transit") and Bettye Muller move to dismiss the first amended complaint ("complaint"). For the reasons that follow, the motion is denied.

## BACKGROUND

    For purpose of deciding this motion, I accept all factual allegations in the complaint as true.

    According to it, plaintiff Fly Shoes s.r.l. ("Fly Shoes") is an Italian company that manufactures shoes. Defendant Bettye Muller Designs Inc. ("BMDI"), a New York corporation, sold shoes under the trademark BETTYE MULLER. Ms. Muller is the principal shareholder and Chief Executive Officer of BMDI.

    From 2008 to 2013, Fly Shoes sold wholesale shoes to BMDI via purchase order. In early 2012, BMDI began to fall behind in its payments, and there remains due a balance of €139,467 on purchase orders made between September 13, 2011 and March 7, 2013.

On September 23, 2013, BMDI assigned the BETTYE MULLER trademark to NY Transit. The agreement stated that "Assignor and Assignee are parties to a certain Employment and Intellectual Property Agreement, dated as of September 23, 2013." First Am. Compl. Ex. 3 at Assignment of Intellectual Property 1, Dkt. No. 15. The agreement was signed by Ms. Muller as CEO of BMDI.

That same day, NY Transit and Ms. Muller, individually, executed an Employment and Intellectual Property Agreement. According to the agreement, NY Transit would employ Ms. Muller as the line builder for the shoe brands Betty Muller, Bettye by Bettye Muller, Ann Marino by Bettye Muller, and Ann Mario. NY Transit agreed to pay Ms. Muller an annual salary of $180,000 plus incentive compensation based on the sales of those brands.

Also on September 23, Ms. Muller wrote to Fly Shoes: "Despite my best efforts to make 'Bettye Muller Designs Inc.' a success, I have found it necessary to cease business operations as of August 31, 2013. The Company has sustained substantial losses. Unfortunately, there is no cash or other assets available to pay any outstanding liabilities." First Am. Compl. ¶ 35.

There was no formal shareholder action taken to authorize BMDI selling off its assets and ceasing business operations.

Fly Shoes claims BMDI breached its contract by failing to pay the balance due on the purchase orders and that the transfer

of the BETTYE MULLER trademark to NY Transit was a fraudulent conveyance under New York law. It further claims that it should be able to pierce the corporate veil and collect personally against Ms. Muller because she abused the corporate form by directing the sale of BMDI's trademark in exchange for a personal offer of employment, and that NY Transit is liable as the successor to BMDI because the trademark transfer was undertaken to defraud Fly Shoes.

## DISCUSSION

NY Transit moves to dismiss the complaint for lack of personal jurisdiction and failure to state a claim, and Ms. Muller moves to dismiss the complaint for failure to state a claim. See Fed. R. Civ. P. 12(b)(2), (6).

### I. PERSONAL JURISDICTION

NY Transit is incorporated and has its principal place of business in California and is registered to do business in New York. Fly Shoes argues that this court has personal jurisdiction over NY Transit as the successor to BMDI.

"An allegation of successor liability against an entity whose predecessor is subject to personal jurisdiction can provide personal jurisdiction over the successor entity." Time Warner Cable, Inc. v. Networks Grp., LLC, No. 09 Civ. 10059 (DLC), 2010 WL 3563111, at *5 (S.D.N.Y. Sept. 9, 2010) (citing Libutti v. United States, 178 F.3d 114, 124-25 (2d Cir. 1999));

accord Patin v. Thoroughbred Power Boats, 294 F.3d 640, 653 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."); see also Transfield ER Cape Ltd. v. Indus. Carriers, Inc., 571 F.3d 221, 224 (2d Cir. 2009) ("Although we have never addressed the significance vel non of 'alter ego' liability in the context of maritime attachments, we have previously observed that, in general, 'alter egos are treated as one entity' for jurisdictional purposes.") (quoting Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 142-43 (2d Cir. 1991)).

There is personal jurisdiction over BMDI because it is a New York corporation. As discussed below, Fly Shoes has stated a claim that NY Transit is the successor to BMDI. Accordingly, this court has personal jurisdiction over NY Transit.

NY Transit's motion to dismiss for lack of personal jurisdiction is denied.

## II. FAILURE TO STATE A CLAIM

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

-4-

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

### A. Piercing the Corporate Veil

In New York, a party seeking to pierce the corporate veil must generally establish "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Trust v. Kummerfeld, 153 Fed. App'x 761, 763 (2d Cir. 2005) (quoting Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11 (1993)).

Fly Shoes alleges that Ms. Muller exercised complete domination over BMDI and abused the corporate form by unilaterally selling off the BETTYE MULLER trademark, BMDI's most valuable asset, and arranging for the only consideration to flow to her personally. Fly Shoes was injured as a result because BMDI was left without assets from which to satisfy its debts to Fly Shoes.

Accordingly, Fly Shoes has stated a claim that it is entitled to pierce the corporate veil and recover against Ms. Muller individually.

**B. Successor Liability of NY Transit**

Most of the claims against NY Transit are based on the premise that it acquired BMDI's liabilities along with the BETTYE MULLER trademark. Ordinarily, the purchaser of a cooperation's assets does not also acquire its liabilities. Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003).

> New York recognizes four common-law exceptions to the rule that an asset purchaser is not liable for the seller's debts, applying to: (1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller.

Id.[1]

Fly Shoes contends that the trademark transfer was undertaken to defraud it. To determine whether a transaction is fraudulent, courts look for certain badges of fraud, such as:

> 1) a close relationship among the parties to the transaction; 2) a secret and hasty transfer not in the usual course of business; 3) inadequacy of

---

[1] Under New York choice-of-law rules, it is the law of the successor's state of incorporation that typically determines successor liability. See Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp., 971 F. Supp. 2d 368, 378 (S.D.N.Y. 2013). "Choice of law does not matter, however, unless the laws of the competing jurisdictions are actually in conflict." Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004). Defendants acknowledge that New York and California use the same test for successor liability. See Reply Br. at 4, Dkt. No. 33. Accordingly, I will apply New York law. See Wall v. CSX Transp., Inc., 471 F.3d 410, 422 (2d Cir. 2006) ("As there is no conflict, for practical reasons, that is, for ease of administrating the case, New York, as the forum state, would apply its law.").

consideration; 4) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; 5) the use of dummies or fictitious parties; and 6) retention of control of the property by the transferor after the conveyance.

Vorcom Internet Servs., Inc. v. L & H Eng'g & Design LLC, No. 12 Civ. 2049 (VB), 2013 WL 335717, at *5 (S.D.N.Y. Jan. 9, 2013) (quoting Kaur v. Royal Arcadia Palace, Inc., 643 F. Supp. 2d 276, 290 (E.D.N.Y. 2007)).

Here, Fly Shoes alleges that BMDI transferred the BETTYE MULLER trademark, its most valuable asset, rendering it insolvent and unable to continue its business without any formal shareholder action; concurrently with the trademark transfer Ms. Muller, the alter ego of BMDI, became an employee of NY Transit and continued to be creative director of the Bettye Muller brand; BMDI received no consideration for the transfer, the only benefit of which flowed to Ms. Muller personally through her employment with NY Transit; BMDI and Ms. Muller knew of Fly Shoes' claim and BMDI's inability to pay it, for on the day of the transfer Ms. Muller wrote to Fly Shoes, "Unfortunately, there is no cash or other assets available to pay any outstanding liabilities," First Am. Compl. ¶ 35; and Ms. Muller retained control of the trademark after the transfer by virtue of her employment with NY Transit.

That is sufficient to state a claim for successor liability against NY Transit.

## C. Constructively Fraudulent Conveyances

Under New York Debtor and Creditor Law ("DCL"), certain conveyances are fraudulent as to a party's creditors without regard to the party's actual intent. N.Y. Debt. & Cred. Law §§ 273, 274.

> Under the DCL, a conveyance by a debtor is deemed constructively fraudulent if it is made without "fair consideration," and (inter alia) if one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274 . . . .

In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005).

NY Transit and Ms. Muller argue that Fly Shoes has failed to state a claim under sections 273 and 274 because "there is no evidence of value as to the trademark 'Bettye Muller,' therefore there has been no demonstration that there was inadequacy of consideration." Br. Supp. Mot. Dismiss at 12, Dkt. No. 23.

The complaint states that BMDI received no consideration for the BETTYE MULLER trademark and that NY Transit and Ms. Muller continue to exploit its value. That is sufficient to allege that BMDI did not receive fair consideration for the trademark.

Accordingly, the motion to dismiss the claims under DCL sections 273 and 274 is denied.

### D. Conveyance Made with the Intent to Defraud

In contrast to DCL sections 273 and 274, which operate without regard to the transferor's intent, DCL section 276 prohibits "conveyance made with intent to defraud."

There are three elements to a section 276 claim: "(1) the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud." In re Flutie N.Y. Corp., 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004).

Here, Fly Shoes alleges that the trademark has value that NY Transit and Ms. Muller continue to exploit, and it is not disputed that the transfer took place.

As for the intent to defraud:

> The relevant intent may be inferred from the facts and circumstances surrounding the transfer. Such facts and circumstances, which may be considered "badges of fraud," include: (1) lack or inadequacy of consideration; (2) family, friendship or close associate relationship between the parties; (3) retention of possession, benefit, or use of the property in question; (4) financial condition of the party sought to be charged both before and after the transaction in question; (5) existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties or pendency or threat of suits by creditors; and (6) general chronology of the events and transactions under inquiry.

Id. (first citing Cadle Co. v. Newhouse, No. 01 Civ. 1777 (DC),

-9-

2002 WL 1888716, at *6 (S.D.N.Y. Aug. 16, 2002), aff'd, 74 F. App'x 152 (2d Cir. 2003) and then citing <u>Salomon v. Kaiser</u>, 722 F.2d 1574, 1582-83 (2d Cir. 1983)).

For the purpose of this motion, I accept Fly Shoes' summary of its claim:

> In the present action, it is alleged that BMDI transferred its most valuable asset to NY Transit for no consideration. Further, NY Transit's hiring of Bettye Muller to be its Creative Director shows the close association between the parties and also shows how Ms. Muller continued to benefit from the trademark by parlaying it into a lucrative job with NY Transit from which she could promote her line of shoes. The "general chronology" of events set forth in the Amended Complaint, namely how Ms. Muller (1) effected BMDI's uncompensated transfer of the "Bettye Muller" trademark to NY Transit, (2) accepted a lucrative job with NY Transit as Creative Director of the Bettye Muller line, and (3) wrote to Fly Shoes saying BMDI could not pay its debt, all on the same day, adds to the overall inference that the transaction was fraudulent.

Mem. Law Opp. Mot. Dismiss at 23-24, Dkt. No. 30.

Accordingly, the motion to dismiss the fraudulent conveyance claim is denied.

### E. Tortious Interference with Contract

Under New York law, the elements of a claim for tortious interference with contract are:

> (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual

breach of the contract"; and (5) "damages resulting therefrom."

Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1996)).

NY Transit and Ms. Muller argue the complaint fails to properly allege their knowledge of Fly Shoes' contract with BMDI and that they intended to procure a breach of that contract. There can be no question that Ms. Muller knew of that contract.

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, "plaintiffs must still plead the events which they claim give rise to an inference of knowledge" or other state of mind. Krys v. Pigott, 749 F.3d 117, 129 (2d Cir. 2014) (quoting Devaney v. Chester, 813 F.2d 566, 568 (2d Cir. 1987)).

As discussed above, the facts alleged in the complaint suffice to give rise to the inference that the trademark transfer was a fraudulent conveyance, which together with the employment agreement was designed to strip BMDI of assets necessary to pay Fly Shoes while allowing Ms. Muller to continue to operate the Bettye Muller brand as an employee of NY Transit. That is also sufficient, at this stage, to support the inference that:

> Defendants NY TRANSIT and MS. MULLER, by agreeing and conspiring among themselves that BMDI'S valuable

-11-

> "Bettye Muller" trademark be assigned to NY TRANSIT
> and by entering into an Employment Agreement between
> MS. MULLER personally and NY TRANSIT, with
> consideration flowing from NY TRANSIT to MS. MULLER
> personally and not to BMDI, such that BMDI could pay
> its debt to FLY, intentionally procured BMDI'S breach
> of its contracts with FLY.

First Am. Compl. ¶ 86.

Accordingly, Fly Shoes has stated a claim for tortious interference with contract.

### F. Unjust Enrichment

NY Transit and Ms. Muller argue that the unjust enrichment claim must fail because unjust enrichment is a quasi-contract claim that applies only in the absence of a contract and Fly Shoes alleges that the purchase orders are valid contracts. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates <u>in the absence of any agreement</u>.") (emphasis in Beth Israel) (quoting Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 587 (N.Y. 2005)).

In reply, Fly Shoes states that the unjust enrichment claim "is made in the alternative to the claim for breach of contract, to the extent that the Court might find that BMDI did not have contracts with Fly Shoes." Mem. Law Opp. Mot. Dismiss at 25.

"A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. Pro. 8(d)(3).

-12-

Accordingly, the motion to dismiss the unjust enrichment claim is denied.

**G. Fly Shoes' Failure to Register to Do Business in New York**

NY Transit and Ms. Muller contend that the complaint must be dismissed because Fly Shoes is not registered to do business in New York.

"A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state . . . ." N.Y. Bus. Corp. Law § 1312. A corporation is considered to be doing business in New York when its New York activities are "permanent, continuous, and regular." MWH Int'l, Inc. v. Inversora Murten S.A., No. 11 Civ. 2444 (HB), 2012 WL 3155063, at *7 (S.D.N.Y. Aug. 3, 2012) (quoting Neth. Shipmortgage Corp. v. Madias, 717 F.2d 731, 736 (2d Cir. 1983)).

Failure to register is an affirmative defense. Fashion Fragrance & Cosmetics v. Croddick, No. 02 Civ. 6294 (WK), 2003 WL 342273, at *7 (S.D.N.Y. Feb. 13, 2003). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) if the defense appears on the face of the complaint." Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd., 620 F.3d 137, 145 (2d Cir. 2010) (alteration omitted) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)).

The complaint does not demonstrate that Fly Shoes' New York

-13-

activities were permanent, continuous, and regular. Accordingly, the motion to dismiss due to Fly Shoes' failure to register is denied.

## CONCLUSION

New York Transit Inc. and Bettye Muller's motion to dismiss the first amended complaint (Dkt. No. 22) is denied.

So ordered.

Dated:   New York, New York
         July 6, 2015

                                          *Louis L. Stanton*
                                          LOUIS L. STANTON
                                               U.S.D.J.